Our last case this morning is Ralph Arellanes v. The Department of Defense, 2023-1806. Mr. Taylor, we're ready when you are. Thank you, Your Honors, and may it please the Court, Mr. Arellanes was terminated more than a decade ago for blowing the whistle on government waste. Nine years ago, the Board ordered that he be reinstated with back pay. Now the Board is refusing to enforce that order against the Department of Defense. It does so based on two legal errors. First, it assumed Mr. Arellanes' disability retirement was an intervening separation that cut off his entitlement to reinstatement. The record actually shows that he never intended to retire. Instead, his supervisor initiated the retirement paperwork, relying on the underlying whistleblower activity as a basis. He may not have intended to retire, but he took all the objective steps leading to retirement, right? Yes, other than the fact that his supervisor initiated the paperwork. So he could have initiated the paperwork himself. Well, I mean, he did file paperwork, or he prepared paperwork. Yes, he prepared paperwork, but he never filed for retirement until after he was terminated for whistleblowing activity. And he never intended to, as he stated in his declaration, which starts on appendix page 1602, to retire. Instead, he did so to avoid the severe economic consequences that would have followed from his unlawful termination. But didn't the board find that he was not ready, willing, and able to perform? Yes, the board found that he was not ready, willing, and able to perform. That finding was based on a legal error, but setting that aside in the context of reinstatement, the ready, willing, and able question is one that is distinct from the question of reinstatement. And that's clear from the regulatory structure. The regulation where that language comes from is a limitation on the calculation of back pay. OPM says that you cannot provide back pay for any period during which the individual was not ready, willing, and able to work based on an incapacitating illness. So the finding based on ready, willing, and able is distinct from the reinstatement question. I think on this record, the evidence shows that Mr. Arianes never would have retired absent his unlawful conduct, and that alone is sufficient to require reversal on the reinstatement question. And the second legal error— Other than his declaration, what's the evidence? What's the proof that you have of that? So, in addition to his declaration, the supervisor's statement itself, because the disability retirement was initiated by the supervisor, and because that statement relied on the very underlying whistleblower conduct, that infects the determination of disability here. They said that he could not work because he wasn't performing his job because he was engaging in whistleblowing activity, as found by the board, and that's unconfessed. How did it infect the other question? So, I think the timing here is key. So that paperwork started—was initiated by the supervisor in July of 2014, so it was done in parallel to the removal for termination. So if you think about the context in which the agency is trying to force him out, by hook or by crook, either terminating him for whistleblowing activity or forcing him into retirement, and that is why there's a connection between the disability retirement and the underlying whistleblower activity that provides further support. And I think, in addition, none of these facts have been disputed in the brief from the Department of Defense. They didn't question his underlying declaration that said he never would have retired absent the unlawful termination action. And I think that is why, in the but-for world, Mr. Arianes would never have retired, and that alone requires his reinstatement starting on September 3, 2024. And concluding otherwise would be inconsistent with this court's decision in Martin v. the Department of Air Force, where the court looked behind the reasons why an individual was injured during interim employment to show that that injury never would have occurred but for the unlawful termination action. And it would also be inconsistent with basic remedial principles and cases from other circuits, Biggs, Leibowitz, and other courts like Payne and Paula. So I think you're anticipating one of my questions. So what are your best cases to support your arguments here? It sounds like Martin is one of your best cases. What are your other controlling best cases? So Wicker from the Supreme Court that established the underlying principle of but-for relief 150 years ago, and it's kind of the fundamental thing that is what relief is about here is returning him to the world that he would have occupied but for the harm. And on this record, that would be reinstatement because he testified in his declaration that he never would have retired in this case. But for how long? Because he also filed his disability paperwork. Yes, he filed his disability paperwork, but he did so after he was terminated. So that decision to retire is connected with the underlying termination because he never would have filed. That's the problem in filing his disability. He had to declare that he wasn't fit for work, that he was disabled. That's not exactly right based on the application for disability retirement. So he had to declare that he had a disability, but the application never required that he say that that disability could not be accommodated. Well, he had notes from his doctor and everything saying that he could not any longer work. Yes, he had a note in 2014 that suggested that he had a disability, but it never spoke to the accommodation point. And I think that's kind of the same point here where the disability application itself never required Mr. Arianes to say that he could not work with accommodation. It did require him to say what accommodations he had been provided, if any, but it did not require him to affirmatively state that he could not work without accommodation. And this returns to the point that his termination cut off his ability to have an ergonomic work assessment, which he had requested from the department and was pending at the time of his termination. So his doctor's note, at least one of them that I saw, said that he was in pain and said, quote, do not allow him back to work. I don't think the doctor's note said specifically that he was not allowed back to work. It said that he was saying don't allow him back to work. I don't think the doctor's note said that. The 2014 note said that don't allow him back to work. It said that he be considered for disability retirement. It said specific facts about his medical condition, but I don't think the doctor's note specifically said that he was not allowed to return to work. Maybe it would be useful for you to take us to the appendix page and actually look at that doctor's note. So the 2014 note is on appendix 532, and the sentence that I'm referencing here is the very last one, where it says I recommend he be considered for medical disability. It does say that he continues to have significant pain that do not allow him to perform his job, and I think that's what Judge Reyna is referencing, but I want to draw the distinction here about accommodation. So Mr. Arianes always could be accommodated, and his application always indicated that his accommodation was pending. There's no question here that Mr. Arianes had back pain. There's no question that he had wrist pain. It's whether he could have been accommodated in his position, and his termination, unlawful termination, cut off that ability. And I think more generally, it's clear that the rightful position here, the position he would have occupied but for the wrong, is not having applied for retirement. The facts are just uncontested on that point, because his declaration has not been challenged, his supervisor's statement was related and infected to that problem, and I think that alone requires reinstatement. I think there's a separate question of back pain here as to whether he was ready, willing, and able to work during the entire period. On that issue, the board also committed a legal error. It placed the burden on Mr. Arianes of showing that he was ready, willing, and able to work during the entire period, when that burden under board regulations clearly fell on the Department of Defense. Correcting for that legal error, Mr. Arianes is entitled to back pay starting at least as of August 23rd, 2016 through present, and a remand to adjudicate his back pay claim before that. Is he getting disability payments now? Yes. That's not currently in the record, but... Do you have to return that, or... Yes, and that's provided for in the regulation. So in the same regulation that addresses back pay, it acknowledges that any retirement benefits that have been paid that wouldn't have been paid absent the unlawful termination are returned. They're credited against the back pay. Do you see any legal bar for reinstatement? No, there's no legal bar for reinstatement here, and in fact, the law requires that Mr. Arianes, because the basic remedial principles are clear, that he never would have retired absent the unlawful termination action. So I think legal principles actually, in fact, require that he be reinstated. It does not bar him from being reinstated to his position, or a comparable position. In returning to the back pay question, there's just no affirmative evidence in this record starting on August 23rd, 2016, to show that Mr. Arianes was not ready, willing, and able to work. The entire basis of the board's decision on that score was that Mr. Arianes had not carried his burden that was improperly placed on that. You can see that at appendix pages 14 and 15, where it's discussing the 2016 note. The board affirmatively acknowledges that note was not inconsistent with the 2014 note, and goes on to say it just isn't enough. We don't think that note is enough affirmative evidence to carry his burden, but that is not the standard here. Instead, the burden fell on the Department of Defense to prove that, and since there's no evidence, there's no reason for this court to remand that question for the board to address it anew. And I think that's especially apparent here, because the Department of Defense always had the opportunity to request medical records from Mr. Arianes. The remand initial decision, when it awarded Mr. Arianes relief, also directed him to comply with any requests from the Department of Defense for his medical records necessary to assess the back pay question. So there's just no affirmative evidence on the record after that point. Moreover, for the date before August 23rd, 2016, the burden issue is bound to too tightly with the record below, and the decision below, to say that that was harmless instead, and the Department hasn't made that argument that it was harmless. Instead, a remand would be appropriate for the board to apply the correct burden framework initially. So I think for all those reasons, the board's decision on reinstatement ought to be reversed. The board's decision on back pay from August 23rd, 2016 on should be reversed, and the board's decision on back pay before that date should be remanded for an adjudication, and generally it should be reamended. I disagree with you on your burden-shifting argument. What would be the relief you'd still be seeking from us? I see my time is in rebuttal. Well, you may answer the question. Thank you, Your Honor. We would still win on reinstatement, so the reinstatement question is distinct from the back pay question. So Mr. Arianes would be ordered to be reinstated from September 30th, 2014 through present, and then the question could be remanded or the issue could be presented to OPM on how that affects his ongoing retirement benefits. But I don't think the court would need to address that question here. And if we disagree with you on the burden-shifting argument, do you still contend that he would be entitled to back pay, and are you contending that you want to reverse or make him remanded? What would you want in terms of disposition? So we have an alternative argument on the back pay question, in that there's no evidence from August 23rd, 2016 moving forward such that the government could not even carry its initial burden of production to create a concrete dispute under Piconi. So that would require a reversal for that period as well. Thank you, Mr. Berry. We appreciate your time. Thank you. Mr. Berry. Good morning, Your Honor, and may it please the court. Here, substantial evidence requires that the court affirm the board's decision that the agency, in fact, did comply with the board's order that required reinstatement of Mr. Arrianos and payment of back pay pursuant to OPM's regulations. Substantial evidence is intended to review here because it is at base a factual finding that is an issue, that being whether at any point in time Mr. Arrianos was ready, willing, and able to work. That is the regulatory exception at issue here for the nonpayment of back pay. Below, the board, in its decision, after Mr. Arrianos was provided additional chances to establish, with record evidence, his ability to be ready, his readiness, willingness, and ability to work, the board weighed all the evidence put forth, found that because the evidence submitted... It's not just a reinstatement issue. Do you agree that Mr. Arrianos was not reinstated to any position? Your Honor, no, I do not agree with that conception of what has gone on here. The board recognized, for example, at Appendix 15, that the agency canceled the removal effect of September 30, 2014, by revising the Standard Form 50 that it previously represented that Mr. Arrianos had been removed. The agency revised that to represent the current status, which was that Mr. Arrianos had retired on disability, and the board says, thereby retroactively reinstating the appellant to his position. The board goes on to recognize, on Appendix 16, that under the unique circumstances of this case, there simply is no additional relief that the agency could have reasonably provided Mr. Arrianos, insofar as it relates to reinstatement. And that dovetails on the point about his not showing a readiness, willingness, or ability to work during any other relevant period. Additionally, the board takes... Go ahead. So, I'm a little bit confused. Like, I'm on, like, Paragraph 23 on Appendix 15, where it says the agency did not reinstate the appellant to his position following the board's found decision reversing removal. But you tell me that you do think that there was reinstatement. So where were you pointing? Your Honor, there's a... I guess it's a paper reinstatement in that on the SF-50, there was, rather than him being removed, there was a change to reflect that he had retired on disability from his position that he was in before he retired. He was not put back into a position actually, but rather the paper record, rather than reflecting the improper removal, which admittedly the record below establishes that removal was improper, he was on paper reflected in his present condition, which is retired on disability. And as counsel opposite confirmed today, he continues to receive disability annuity payments to this day. So when that happens, do you notify the veteran and say, we're about to take this action, we're going to take back the wrongful termination, and we're now going to put you on this disability benefit program? Your Honor, when the agency... It seems to me that Mr. Arianes at some point has sandbagged here. Your Honor, there's been no... I would disagree that there's been sandbagging here, but rather Mr. Arianes... Well, there was an original finding that he had been improperly terminated. Correct. And that he was due back pay. Correct. But he was never reinstated. He was never given any back pay. Instead, he was handed another determination that he was now disabled and receiving disability benefits. Your Honor, he was not handed a disability retirement without his say, but rather the record establishes, as you were speaking with Mr. Day, about the statements that Mr. Arianes made to OPM in requesting disability retirement annuity payments... Yeah, I get that. Let me ask you this question. Can an employee's disability retirement service per se bar to his statement? I don't believe so, Your Honor, and I think the board recognizes that... Well, give me an example when it doesn't. When the employee's retirement on disability benefits or retirement on disability retirement is not a per se bar. I believe this case is a representation of that, in that the board's decision below, while it considers the fact, undisputed, that Mr. Arianes had retired on disability, had been found by OPM to be eligible to receive a disability retirement annuity, that is only one factor in the board's weighing of all of the record evidence that was before it. There additionally is all of the attempted showings, found to be incredible by the board, that Mr. Arianes at any point was, in fact, ready, willing, and able to work. OPM's finding... But he claims that he took those steps because he was about to be terminated. So he initiated, in order to keep a flow of income, he initiated thinking that he's thinking ahead as to what he needs to do, and it was all propelled by the notion that he was going to be terminated. Your Honor, if that is a statement made by Mr. Arianes almost three years after initially applying for disability retirement with OPM, and that statement, as well as inconsistent as the board recognizes with other record evidence, that preponderates, actually, that Mr. Arianes, at the time he applied for disability benefits, was disabled and entitled to receive a disability retirement annuity. Just to be clear, you did say that it's your view that disability retirement does not serve as a per se bar to reinstatement. That's correct. And the board's opinion in disagreeing with the administrative judge's ruling on judicial estoppel, I think, lends to that notion, as well, that ultimately it's the board's province to decide whether at any point, at least insofar as back pay is concerned, the petitioner demonstrated in response to the agency's initial concrete evidence whether at any point he was ready, willing, and able to work. Now, there are a couple different doctor's notes here, right? There's the 2016 doctor's note, right, where it does have statements about ready, willing, and able to work. So does your viewpoint change in terms of the time period on your arguments relating to ready, willing, and able to work? Because I know that there's a time period of 2014 to 2016 where there's a different doctor's note that might be applicable in covering some of that time versus 2016 moving forward. No, Your Honor. Our position is that substantial evidence supports the board's decision that Mr. Arianes at no time met his responsive burden to establish that he was ready, willing, and able to work at any point. And that took into consideration the August 2014 statements by the doctor. Dr. Rivera took into account the statements consistent in August 2014 as well of Mr. Arianes himself in the disability application chronicling all of his conditions that he believed entitled him to disability retirement. And then we have the August 23, 2016 letter from Dr. Rivera where the board considers that as well. And this is all in appendix 11 through 13 where the board methodically walks through all of this evidence. The August 23, 2016 letter from the doctor, while not inconsistent per se with the earlier August 2014 letter from Dr. Rivera and Mr. Arianes' statements to OPM, is inconsistent with a later June 2017 letter from Dr. Rivera where he states for the first time, as does Mr. Arianes in July 2017, that actually Mr. Arianes was ready, willing, and able to work since September 30, 2014. At base, Your Honor, we have a panoply of inconsistent statements about his readiness, willingness, and ability to work in the record. It is the epitome of substantial evidence review that when we have inconsistent facts in the record such as this that may lead a reasonable person to find, support a conclusion, this court should not, it's not a de novo appraisal for this court to second guess or substitute its judgment for that of the board. The board's opinion here is supported by substantial evidence. Again, appendix pages 11 through 13, walking methodically through all of the evidence propounded before the board. Again, with additional opportunity, I do believe a rare opportunity that the full board actually orders a further record development and provides both the petitioner and the agency, but the petitioner for sure, who has in his custody, admittedly, the confidential medical records that could establish his readiness, willingness, and ability to work, gave him that opportunity to do so in 2017. With that additional record development, the board weighed everything and found that there was no showing that he was ready, willing, and able to work at any point during the period. So to Judge Cunningham's point, September 2014 versus August 2016, our position is the same. Substantial evidence doesn't establish, or substantial evidence supports the board's finding that there is no showing of a readiness, willingness, or ability to work. What if we were to agree that there was some error made here with respect to reinstatement, and then send it back to deal with more of these factual considerations regarding this ready, willing, and able to work point? What do you think of that possible disposition, and what's your response? Your Honor, again, given what the board recognized on Appendix 16 to be the unique circumstances of this case, Mr. Ariannis has been provided the full relief that reasonably is available in this case. The agency did what it reasonably could do so far as reinstatement is concerned by revising the SF-50 to reflect that he had retardum disability, as he undisputedly did, and putting him into a different position is simply antithetical to him being on disability retirement. A condition, an element of OPM's determination of him being eligible for retirement annuity payments is that he cannot render useful and efficient service in his position. Is it your position that he has received effectively make-whole relief here? Yes, Your Honor. He has received, under the unique circumstances of this case, he has received make-whole relief, such that in the world but for having been improperly removed, he nonetheless has received all back pay he is entitled to, and he has, with regard to reinstatement, also received all relief the agency could reasonably provide. You said all back pay he's entitled to. How much back pay are you saying he's received? He's received none. He's entitled to none. Okay, I thought that. Okay, so you're saying he's entitled to none and he's received none, not that he's somehow received some sort of back pay. The agency is in compliance, as the Board found, with the Board's order to reinstate and pay back pay pursuant to OPM regulation. Refresh my memory. Who files the Form F-50? The standard Form 50, Your Honor, I believe you're referring to, is not a form I don't believe that is filed anywhere, but rather is a component of an employee of the federal government's official personnel file that is a... Who prepares it? The agency, the employing agency, prepares that standard Form 50. And there's no input by the employee? I don't believe there's input to the employee. Your Honor, I can't speak specifically as to whether an employee may have input in certain circumstances. That is a defining moment in this case, right? The defining moment, Your Honor, in this case, I'm not sure there is one in particular. The fact that Mr. Ariannis applied for retirement disability benefits and was granted a retirement disability... But at the same time, he's waiting, he's waiting for the government to give him the relief of reinstatement and the back pay that he was entitled to. And he never did get that because, according to the standard Form 50, he was no longer retired or he was now disabled. He's on the disability program. Your Honor, I would not say that the SF-50 is the dispositive paper on that point. I mean, it's undisputed. That changes his legal rights. It's undisputed in this case. Did you say that? That at that point, Mr. Ariannis' legal rights were changed? At the point that Mr. Ariannis went on disability retirement, it was a more difficult road to hoe. When this form was entered into his record, his legal rights changed. Because he was no longer going to get reinstatement. He was not going to get back pay. He was no longer able at that point to provide useful and efficient service. And he had no input on the form. Wouldn't you say that his legal rights changed at that point? His legal rights changed when he went on disability retirement, Your Honor, in that he could no longer perform by statute 5 U.S.C. 8451. You're saying the SF-50 simply reflected earlier developed facts. The SF-50 did reflect earlier developed facts that, as I mentioned, Your Honor, in speaking with Judge Reyna before, were based in large part on inputs from Mr. Ariannis himself. Again, no sandbagging has occurred. Mr. Ariannis had a hand in the ultimate determination that OPM made in submitting certified statements on the disability application, submitting statements consistent in August 2014 from his doctor of his inability to work. And those statements go so far as to say, additionally, that any further treatment is unlikely to provide any significant benefit at Appendix 532. And getting back to the burden of proof that was discussed earlier, who has the burden of proof to show willingness, ability for his will, ready, willing, and able? Your Honor, the burden of proof question here is, who has the ability to prove compliance with the Board's decision? Undisputedly, by regulation, the agency has that burden. The agency, pursuant to the burden-shifting framework this Court has approved, in cases like EISLE, E-I-S-E-L-E, the agency must first put forth some form of concrete positive evidence as to the petitioner's inability to work. The agency did that here, namely in putting forth the disability retirement annuity grant by OPM, pursuant to statute, that found him unable to render useful and efficient service at 5 U.S.C. 8451. The responsive burden then shifted to Mr. Ariannas to come forth with evidence undermining that concrete evidence that the agency had put forth. Despite contrary assertions by Mr. Ariannas, there is nothing inconsistent with the agency having the burden to show compliance with the Board's decision and still Mr. Ariannas having some form of responsive burden after the agency already put forth concrete evidence of an inability to work that he could have actually, in a matter of fact, worked. What's your response to the argument that the Board was required to consider whether Mr. Ariannas would have applied for retirement even if he had not been terminated? That Mr. Ariannas would have been required to apply for Mr. Ariannas? The Board was needed to consider whether he would have applied for retirement, like the disability, even if not going to be terminated. We disagree with the notion that Mr. Ariannas argues that there is a requirement to look behind the application for disability retirement. There simply is no requirement in case law that the Board look behind the disability retirement application and more so the disability retirement finding by OPM because that is the dispositive point when it comes to his ability to render useful and efficient service in his position. And just to put a point on that, Your Honor, it is simply antithetical to being able to work, to being ready, willing, and able to work when an employee has been found unable to render useful and efficient service and therefore entitled to disability retirement annuity payments. That's the main point we're making. But additionally, as I mentioned previous, the Board's decision uses, considers, weighs OPM's finding of disability retirement annuities as a simple factor in everything considered before the Board. We have, as we've spoken about today, the multiple doctor notes, the later declaration from Mr. Ariannas, Mr. Ariannas' initial statements in August 2014, establishing or certifying that he was in fact disabled. And is credibility involved in those evaluations? And surely credibility is involved in those evaluations, Your Honor, and the Board in weighing all of the evidence before it at Appendix 11 through 13 made credibility findings that the Court generally does defer to. Granted, those credibility findings here are not demeanor-based. Where in the record is that? Appendix 11 through 13 is where the Board goes through methodically all of the various pieces of evidence it had before it about Mr. Ariannas' willingness, readiness, and ability to work. And what is it about credibility that they found? He's being untruthful or... Well, in weighing, for example, Mr. Ariannas' statements in the July 2017 declaration, the Board finds that lacking credibility because it's inconsistent with other evidence in the record that the Board finds to be more credible, such as the contemporaneous August 2014 statements about his condition when he applied for disability benefits. Additionally, it's not outweighed by any other evidence that the Board finds to be credible. The doctor's notes, as I mentioned in speaking with Judge Cunningham previous, the Board weighs methodically all of those and simply finds at no point do they actually establish that Mr. Ariannas was ready, willing, and able to work. But at the point at the end of the day, putting aside credibility, which I understand normally is demeanor-based, and this is a record, this is a paper record that we have here, but the Court also, as well established, does not re-weigh the evidence. And the Board quite clearly, at Appendix 11 through 13, weighed the evidence and did so methodically and thoroughly. And those findings supported by substantial evidence should not be disturbed. Thank you, Counsel. You've gone well over, but we've lost your questions because an individual's rights are at stake. Thank you, Your Honor. Mr. Day, you can have the full rebuttal time you requested. Thank you, Your Honors. I'd just like to make three points on rebuttal here. The first is that Mr. Byrd mentioned the substantial evidence standard repeatedly during his argument, but that's not the standard that applies here. The Board committed two legal errors, so the question is instead whether this Court can affirm, based on the undisputed evidence in the record, or a remand is necessary. The first legal error is that the Board should have looked behind whether he would have retired absent the unlawful employment action. As I mentioned in response to Judge Cunningham's question in the opening argument, there's case law to that effect. Wicker v. Hopper and Martin v. the Department of the Air Force both support that conclusion based on general remedial principles. Mr. Byrd referenced no case that pointed the other direction, no holding that they could not look behind the distinction in this case. How does one determine whether if different facts had occurred, he would have made different decisions? So one would determine that by making the normal factual findings that one would do in any case the Board could do here. It's just on this record. It shows that Mr. Ariannis never would have retired absent the unlawful termination. So a remand would not be necessary in this case. It could be necessary in other cases where the facts are disputed and don't establish it definitively. But the government answered that question, right? Answered which question? The question you just raised, whether he would have retired. No, I don't think it did. It suggested that he was disabled as a general matter. But that's not whether he would have applied for the retirement. It doesn't address the fact that his request for accommodation was cut off by his unlawful termination. So I don't think it gets at the crux of the issue of whether he would have applied for retirement absent the unlawful employment action. I think turning to the second error, the Board improperly placed the burden on Mr. Ariannis. And Mr. Berg referenced the ISIL case as support for the fact of this concrete burden-shifting point. That is a non-presidential case of this Court. It does not have presidential effect, and it did not engage with the question of whether the interaction between the regulation and what the burden of proof ought to be here. Below, the Board relied on Poconi. That was a case from the Court of Claims that predated both the Board and the regulation at issue, so it doesn't govern here. Instead, there's a legal error based on the clear regulatory text in placing the burden on Mr. Ariannis, and correcting for that, there's no evidence moving forward. Mr. Ariannis is getting disability pay right now, correct? That's correct. If we affirm, does that continue? No. His disability payments would be reclaimed from OPM, and he would be reinstated to his position. And based on the reinstatement... No, I said if we affirm the Board's position. Sorry, I misheard you. If the decision is affirmed entirely, yes, Mr. Ariannis would continue to receive retirement. Apologies for misunderstanding. And I think another point about Mr. Burt's argument is that he was consistently blending the facts between reinstatement and back pay here. The regulation set up that Mr. Ariannis could be reinstated without the full period of back pay or without back pay at all. The ready, willing, able question bears on back pay, not on reinstatement. And he focused on Appendix Pages 11 through 13, which were credibility findings primarily about the 2017 note. He did not address Appendix Pages 14 and 15, which were about the 2016 note, which were the focus of our reversal argument that there's no evidence moving forward on that issue. And so a reversal would be appropriate after correcting for the legal error. And the last point that I wanted to make on rebuttal is in response to Judge Rayna's question about what the defining moment in this case was. The defining moment in this case was when Mr. Ariannis was terminated for blowing the whistle on government waste. And he retired in an effort to preserve a semblance of an income while challenging that removal, eventually winning that removal appeal before the MSPB. And that retirement was a function of that. He was always ready, willing, able to work with companies. He never was reinstated, and he never did get any back pay pursuant to the whistleblower finding, right? That's exactly right. The remedial order? Yes, that's exactly right. There was just a mere shuffling of paperwork around replacing his termination for whistleblowing with a retirement on disability that itself was infected by the underlying whistleblowing conduct, and he never received a dollar of back pay. And, Jess, you don't have to give me an actual figure, but I assume that getting back pay would lead to him getting more money than what he's currently receiving in terms of the disability pay? Yeah, that's right. So the way disability pay is calculated, for the first year you get 60% of your high-3 average, the second year you get 40%, and then it goes down once you reach 62% to the standard basic annuity payment calculation. So his full pay would be greater than his retirement. But it would be deducted. His retirement, based on regulations, would be deducted. Thank you. Thank you, counsel. The case is submitted. That concludes today's arguments.